UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIM McNAMARA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No. 17-cv-12523-ADB |
| S.I. LOGISTICS, INC. (F/K/A GREEN SMOKE, INC.) and NU MARK LLC, | * |
| | * |
| Defendants. | * |

**MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND TO DISMISS**

BURROUGHS, D.J.

Plaintiff Tim McNamara filed this action against Defendants Green Smoke, Inc. ("Green Smoke"), Nu Mark, LLC, and Altria Group, Inc. (collectively, "Defendants") alleging claims for breach of contract, quantum meruit, conversion, breach of the covenant of good faith and fair dealing, promissory estoppel, civil conspiracy, fraud, unjust enrichment, and interference with advantageous business relations. [ECF No. 1-3 (hereinafter, "Complaint" or "Compl.")]. Currently before the Court is Defendants' motion to compel arbitration and dismiss the Complaint. [ECF No. 22]. For the reasons set forth below, the motion is DENIED.

**I.       BACKGROUND**

As Defendants' motion to compel arbitration was made in connection with a motion to dismiss, the Court "draw[s] the relevant facts from the operative complaint and the documents submitted to the district court in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018) (citation omitted). The facts outlined herein are undisputed except where noted.

During the time period relevant to the Complaint, Green Smoke was in the business of selling electronic cigarettes online. Compl. ¶ 6. Green Smoke hired third-party contractor "Affiliates" to market Green Smoke's products on independent websites and paid them commissions on the sales that they generated. Id. ¶¶ 7, 9. Green Smoke was eventually acquired by Defendant Nu Mark, LLC, which is a subsidiary of Defendant Altria Group, Inc. Id. ¶¶ 4–5, 25.[1]

Plaintiff became an Affiliate of Green Smoke some time between October 2009 and February 2010. Id. ¶ 8; [ECF No. 24 ¶ 4].[2] Green Smoke Affiliates had access, through user accounts, to an online portal called "Back Office," which displayed announcements, marketing materials, and administrative and customer information. [ECF No. 28 at 4]. In fall 2011, Green Smoke released a New Affiliate Terms of Services Agreement (the "2011 Agreement") through the Back Office portal. [ECF No. 24 ¶ 7; ECF No. 24-1]. The terms of the 2011 Agreement were electronically displayed in a text box that contained a scroll feature. [ECF No. 24 ¶ 8]. The 2011 Agreement begins:

> Please review the following terms carefully. If you do not agree to these terms, you have no right from Green Smoke® to obtain information from or otherwise use this Web site. . . .
>
> BY CHECKING THE BOX STATING THAT YOU HAVE READ AND AGREE TO THE TERMS AND CONDITIONS OF THIS AFFILIATE PROGRAM AGREEMENT AS PART OF YOUR REGISTRATION WITH THE COMPANY, YOU AGREE AND CONSENT TO BE CONTRACTUALLY BOUND BY THE TERMS AND CONDITIONS OF THIS AFFILIATE PROGRAM AGREEMENT FOR AS LONG AS YOU ARE A PART OF THE COMPANY'S AFFILIATE PROGRAM.

[ECF No. 24-1 at 2].

---

[1] On February 2, 2018, Plaintiff voluntarily dismissed Defendant Altria Group, Inc. from this case. [ECF No. 15].
[2] The parties dispute when Plaintiff became a Green Smoke Affiliate, but the precise date is not material to this Order.

Three provisions of the 2011 Agreement that are relevant to the Complaint include a termination provision, an arbitration provision, and an integration provision. First, the termination provision set forth in Section 2.5 states:

> You warrant and agree that You understand that this Affiliate Program Agreement is an at-will agreement, meaning the Company can terminate this Agreement for any or no reason by serving You with a thirty (30) day notice of termination in accordance with Section 19 of this Affiliate Program Agreement. Such termination at-will by the Company shall not entitle You to any type of payment or compensation whatsoever.

[ECF No. 24-1 at 5]. In addition, "SECTION 23 – ARBITRATION" provides:

> In the event any controversy or claim arises out of this Agreement and cannot be settled by the Parties, such dispute shall be resolved by arbitration only in accordance with the then current rules of the American Arbitration Association or the International Chamber of Commerce, in Miami, Florida, and judgment upon the award shall be entered into any court having jurisdiction thereof.

Id. at 15. Finally, "SECTION 25 – ENTIRE AGREEMENT" provides:

> This Agreement constitutes the complete and exclusive agreement between the parties relating to the subject matter hereof. It supersedes all prior proposals, understandings and all other agreements, oral and written, between the parties relating to this subject matter. . . .

Id.

The text box that displayed the 2011 Agreement contained five checkboxes at the bottom, including one that stated, "**I have read, understand and agree to all the above terms and conditions.**" [ECF No. 24-1 at 16 (emphasis in original)]. At some point, any Affiliate who failed to acknowledge and accept the terms of the 2011 Agreement by completing the five checkboxes would lose access to the Back Office portal and would become ineligible to receive future commission payments from Green Smoke. [ECF No. 24 ¶ 9]. Defendants introduced evidence showing that Plaintiff completed the 2011 Agreement's five checkboxes on October 31, 2011 at 5:30 a.m., but Plaintiff disputes this. Id. ¶ 10; [ECF No. 24-3 at 2; ECF No. 28 at 8–9].

In November 2014, Plaintiff was terminated from the Affiliate program. Compl. ¶ 27. On October 31, 2017, Plaintiff filed a Complaint in Barnstable County Superior Court in which he asserted claims for breach of contract, quantum meruit, conversion, breach of the covenant of good faith and fair dealing, promissory estoppel, civil conspiracy, fraud, unjust enrichment, and interference with advantageous business relations. See Compl. Defendants removed the action to this Court on December 20, 2017. [ECF No. 1]. On March 23, 2018, Defendants moved to compel arbitration and dismiss the Complaint. [ECF No. 22]. Plaintiff filed an opposition on April 27, 2018 [ECF No. 28], and Defendants filed their reply on May 14, 2018 [ECF No. 31].

## II.    LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was enacted primarily to "overcome judicial hostility to arbitration agreements." See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 272 (1995). The provisions of the Act "embod[y] the national policy favoring arbitration and place[ ] arbitration agreements on equal footing with all other contracts.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).

"When an enforceable arbitration agreement exists between the parties, a court may enforce that agreement by staying existing litigation pending arbitration of the parties, 9 U.S.C. § 3, or compelling the parties to arbitrate, 9 U.S.C. § 4." DeLuca v. Bear Stearns & Co., 175 F. Supp. 2d 102, 106–07 (D. Mass. 2001). A party seeking to compel arbitration under the FAA "must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke

4

the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Soto-Fonalledas, 640 F.3d at 474 (internal quotation marks and citation omitted). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (emphasis in original). "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." Id.

### III. DISCUSSION

Plaintiff advances several arguments challenging the validity and scope of the 2011 Agreement and the enforceability of the arbitration provision, including that the 2011 Agreement is illusory because it reserves the right for Green Smoke to unilaterally modify the terms of the 2011 Agreement without notice to Plaintiff. [ECF No. 28 at 11]. Defendants do not address illusoriness in their motion or reply. [See ECF No. 23; ECF No. 31].

"[A]rbitration is a matter of contract," AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986) (citation omitted), and when deciding the arbitrability of a matter, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Cullinane, 893 F.3d at 61–62 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The parties agree that Massachusetts law applies when determining whether the 2011 Agreement was properly formed. [ECF No. 23 at 7 n.5; ECF No. 28 at 5].

In National Federation of the Blind v. The Container Store, Inc., the First Circuit recently considered whether an arbitration clause was illusory under Texas law where a contract contained a change-in-terms provision that allowed the Defendant to modify the terms of the agreement at any time. 904 F.3d 70, 80–81 (1st Cir. 2018). The court noted that under Texas

5

law, "an arbitration clause is illusory if a party to a contract 'can avoid its promise to arbitrate by amending the provision or terminating it altogether,'" and that "a contract that is illusory was never formed, because it lacked the necessary consideration." Id. at 86 (quoting In re 24R, Inc., 324 S.W.3d 564, 567 (Tex. 2010)). The First Circuit held that because the defendant unilaterally retained the right to alter the terms of the contract "at any time" based on the change-in-terms clause, the contract was a "text-book definition of illusory" and, accordingly, no agreement to arbitrate existed between the parties. Id. at 87 (citing Morrison v. Amway Corp., 517 F.3d 248, 257 (5th Cir. 2008)).

Courts have applied similar reasoning to find arbitration agreements illusory under Massachusetts law. See Douglas v. Johnson Real Estate Inv'rs, LLC, 470 Fed. App'x 823, 826 (11th Cir. 2012) (holding that under Massachusetts law, an arbitration provision was illusory and an employment agreement was unenforceable because employer retained unilateral right to alter terms without notice to employee (citing Jackson v. Action for Bos. Cmty. Dev., Inc., 525 N.E.2d 411, 415–16 (Mass. 1988)); Domenichetti v. Salter Sch., LLC, No. 12-11311-FDS, 2013 WL 1748402, at *7 (D. Mass. Apr. 19, 2013) (holding that under Massachusetts law, an arbitration agreement was not enforceable where defendants "had the power to require plaintiff to arbitrate the covered dispute, while simultaneously reserving the right to modify the agreement" without notice to plaintiff); see also Jackson, 525 N.E.2d at 415–16 (finding that employee manual was not a contract between employer and employee because, *inter alia*, employer retained the right to unilaterally modify the manual's terms, which "tend[ed] to show that any 'offer' made by the [employer] in distributing the manual was illusory"); Graphic Arts Finishers, Inc. v. Bos. Redev. Auth., 255 N.E.2d 793, 796 (Mass. 1970) ("[A] promise that binds one to do nothing at all is illusory and cannot be consideration." (citing Gill v. Richmond Co-op.

6

Ass'n, 34 N.E.2d 509, 513–14 (Mass. 1941)); 3 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 7:11 (4th ed. 2008) ("Where no consideration exists, and is required, the lack of consideration results in no contract being formed.").[3]

Here, the "AFFILIATE PROGRAM SUMMARY" of the 2011 Agreement provides that:

> The Company reserves the right to change, alter, modify, and/or amend this Agreement, from time to time, at its sole discretion without serving any notice to You. You will be bound by all such amended terms and conditions. You can review the most current version of this Agreement at any time at our Web site. All amended versions of this Agreement will go into effect not earlier than thirty (30) days from the date any such amended version is displayed on Our Web site.

[ECF No. 24-1 at 3]. Section 25 of the 2011 Agreement, entitled "ENTIRE AGEREMENT," also provides that:

> The Company reserves the right to change, alter, modify and/or amend this Agreement at its discretion and at any time upon thirty (30) days notice.[] When the Company amends this Agreement, the Company shall make reasonable efforts to provide You with general, not specific, notice of such changes via email, newsletter, or posting a conspicuous announcement on the Company's Web site of such changes or amendments.

Id. at 15. The "AFFILIATE PROGRAM SUMMARY" and "ENTIRE AGREEMENT" provisions plainly provide Green Smoke with the right to modify the terms of the 2011 Agreement "at any time" and at its sole discretion. In addition, the 2011 Agreement permits Green Smoke to make any such changes without providing any notice to the Affiliates beyond displaying the amended version of the agreement on Green Smoke's website. While an amended version of the 2011 Agreement would not go into effect until 30 days after the date on which it appeared online, there is no provision in the contract that would preclude any amendment from having a retroactive effect. As a result, Green Smoke would be permitted to amend or terminate

---

[3] Accord In re Zappos.com, Inc., 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012) ("Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract.").

Section 23, the arbitration provision, even if it had previously received notice of an existing arbitration dispute. Thus, because Green Smoke "had the power to require plaintiff to arbitrate the covered dispute, while simultaneously reserving the right to modify the agreement," the Court finds that the agreement was illusory from the outset and no agreement to arbitrate was formed between the parties. <u>Domenichetti</u>, 2013 WL 1748402, at *7. Defendants are therefore not entitled to arbitration.

### III.    CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and dismiss the Complaint is <u>DENIED</u>.

**SO ORDERED.**

December 13, 2018                                         <u>/s/ Allison D. Burroughs</u>
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE